St. Louis & San Francisco Railroad Company *v.* Satterfield.

Opinion delivered April 8, 1905.

Railroad—stock-killing.—Where the testimony of the engineer of a train which killed a horse, to the effect that he used proper care after discovering the presence and danger of the animal, was contradicted by circumstantial evidence, a judgment against the railroad company will be affirmed.

Appeal from Crittenden Circuit Court.

Allen Hughes, Judge.

Affirmed.

The complaint alleged that the defendant's servants in Crittenden County, on May 29, 1902, negligently ran over a horse belonging to the plaintiff, valued at $250. The answer denied that the plaintiff was the owner; denied that it was killed by the train on a line of the defendant's railway; denied that it was negligently and recklessly done.

The engineer testified as follows: "When I got down opposite where the old station stood, a horse came out from behind some box cars on the track, about 100 feet in front of the engine, and started down the railroad dump between the switch and the main line, and I sounded the stock alarm, and then applied my air brakes as quick as I could, and slowed down all I could, and I was also sanding the track to keep from striking that horse, and the animal ran on down there 50 or 60 yards further, and I had slowed down from 25 miles an hour to 12 miles an hour, and as it started across the track, I struck it. If it had been one jump further over, it would have gotten across, and I would not have struck it." On cross-examination this witness said that he could not tell how far he knocked the horse because he did not see it, but that, when running 10 or 12 miles an hour, he would not ordinarily knock a horse over 10 or 12 feet. This horse weighed about 1,300 pounds.

Witness Neely for plaintiff testified that the train "slowed up for a distance of 50 yards, but did not at any time get slower than 25 miles an hour."

W. H. Turner, a witness for the plaintiff, testified that, a few minutes after the horse was struck, he went down to the scene of the accident, and found the horse lying against a telegraph pole. He could see where its tracks came on the railroad track, and where its tracks stopped, and where it pulled one of its shoes off. He stepped the distance from where the tracks stopped to where he found the shoe, and it was some 70 steps or

feet. It was little more than the length of two rails, and he was knocked angling. He does not think that he noticed any sand on the rails, and belives he would have seen it if there had been any. From where the horse came upon the main track down the track it was the length of three rails before he was struck, and then he was knocked the length of two rails.

J. F. Smith, a witness for the railway company, testified that he saw the horse in the air after he had been knocked off the track. The train did not slow down any where the horse was struck. Possibly it had slowed down a little above there, but, judging from the way the horse went up into the air, it must have started up again.

There was evidence tending to show that the horse was worth from $150 to $200. The verdict and judgment were for $187.

*C. H. Trimble,* for appellant.

There was no negligence on the part of the railroad employees. 57 Ark. 516; 53 Ark. 96; 41 Ark. 161; 48 Ark. 366; 47 Ark. 321.

*Frank Smith,* for appellee.

WOOD, J., (after stating the facts.) The testimony of the engineer to the effect that when he struck the horse he had reduced the speed of his train to 12 miles per hour was contradicted by witness Neely, who testified that the train did not at any time get slower than 25 miles an hour. It was also contradicted by the evidence of Turner, which showed that the animal was thrown two rail lengths, or about 70 feet. Whereas the conductor stated that running 12 miles per hour his train could not throw an animal over 10 or 12 feet. If Turner and Neely were telling the truth, the train must have been running more than 12 miles per hour. The conductor stated also that he put sand on the track, and "slowed down all he could," etc., to keep train from striking the horse. Witness Turner said he did not see any sand on rails, and believed he would have seen it if it had been there. These and other palpable contradictions of the engineer's testimony, as well as its own inconsistency, made the matter of appel-

lant's negligence peculiarly a question for the jury. The appellant presents no other question, and the verdict was so manifestly correct as to impress us that this appeal was prosecuted merely for delay. The judgment is therefore affirmed, with a penalty of 10 per cent. added here.